FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                 CR No. 13-1281 RB/GBW

ADRIANA IVETTE ESTRADA,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    This matter is before the Court on Defendant's Motion to Set Aside Judgment and the government's Motion Requesting the Court to Rule on The Waiver of the Attorney-Client Privilege Related to Defendant's Motion for Writ of Coram Nobis. *Docs*. 49, 53. Having reviewed the briefing and relevant law, I will grant the government's motion and recommend denial of Defendant's motion.

**I.    BACKGROUND**

    Defendant Adriana Estrada is a Mexican citizen. *Doc. 49* at 1, Ex. 1. She has been a lawful permanent resident of the United States since March 8, 1989. *Id*. Defendant was arrested on January 11, 2013. On January 13, 2013, the United States filed a criminal complaint charging that Defendant violated 21 U.S.C. §§ 841 and 952 by unlawfully, knowingly, and intentionally importing and possessing, with intent to distribute, 94.5 pounds of marijuana. *Doc. 1*. After her arrest, and after having received

1

her *Miranda* warning, Defendant confessed to the crimes at issue. *Doc.* 54, Ex. 2. On April 17, 2013, Defendant was indicted on the same counts of possession with intent to distribute and importation of marijuana. *Doc. 19.* On July 15, 2013, Defendant, pursuant to a plea agreement, pled guilty to both counts of the indictment. *Doc. 37.* In the plea agreement, the government agreed to stipulations which would yield a time served sentence under the sentencing guidelines. *Doc. 54*, Ex. 2. At the sentencing hearing on August 20, 2013, United States District Judge Joe Billy McDade accepted the stipulations and imposed a sentence of time served. *Docs. 42, 43, 44*.

That same day, the Department of Homeland Security (DHS) initiated removal proceedings against Defendant. *Doc. 49* at 1, Ex. 1. Defendant is currently detained by DHS. *Id.* On September 24, 2013, Defendant filed her Motion to Set Aside Judgment. *Doc. 49.* The motion is a writ of coram nobis through which Defendant moves the court to vacate her conviction based on ineffective assistance of counsel for a failure to advise her of the immigration consequences (deportation) of her guilty plea. *Id.* at 4. The government responded on November 4, 2013. *Doc. 54.* The government, by separate motion on the same day, moves the Court to find that Defendant has waived her attorney-client privilege in relation to the plea agreement because of her ineffective assistance of counsel claim. *Doc. 53.* Defendant responded on November 5, 2013, stating that she does not oppose the motion. *Doc. 55.* As such, I hereby GRANT the government's motion (*doc. 53*).

## II.     STANDARD OF REVIEW

Unlike habeas corpus relief, a writ of error coram nobis may be invoked by a defendant who is not in custody but who still seeks to challenge the validity of a judgment and sentence. *Igo v. United States*, 303 F.2d 317, 318 (10th Cir. 1962); *Ward v. United States*, 381 F.2d 14 (10th Cir. 1967).[1] The Tenth Circuit has established three prerequisites to grant the writ of error coram nobis: (1) the petition must demonstrate that the petitioner "was duly diligent in bringing his claim;" (2) "other remedies and forms of relief are unavailable or inadequate;" and (3) the "writ is available only to correct errors resulting in a complete miscarriage of justice and under circumstances compelling such action to achieve justice." *United States v. Ballard*, 317 Fed. App'x 719, 720-21 (10th Cir. June 11, 2008) (citation and internal quotation marks omitted). The petitioner bears the burden of establishing each of these prerequisites. *Id*. To establish the "complete miscarriage of justice" prong on the basis of ineffective assistance of counsel, the petitioner must show at least "that his counsel's efforts were objectively unreasonable and that his counsel's deficiencies prejudiced him." *Id.* at 722 (citing *Strickland v. Washington*, 455 U.S. 668, 687 (1984)). Indeed, the first prong is met if counsel fails to "inform [his] client whether [her] plea carries a risk of deportation." *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). Finally, to establish the second prong in a guilty plea context, a "defendant must show … that, but for counsel's error, the

---

[1] The writ of error coram nobis is available under the All Writs Act, 28 U.S.C. § 1651.

3

defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citation omitted).

### III.  ANALYSIS

Defendant contends that her counsel during the plea process failed to advise her of the immigration consequences of a guilty plea, and asserts that this failure rises to the level of necessitating relief under a writ of coram nobis. *Doc. 49* at 2. Specifically, Defendant complains that she was unaware that by pleading to the violations to which she pled that she would be ineligible for relief from deportation under 8 § 1229b(a) and would be permanently excluded from the United States under 8 U.S.C. § 1182. *Doc. 49* at 2-3.

Both Defendant and Defendant's trial counsel have supplied affidavits giving their version of the plea process.  According to Defendant, although she advised him of her immigration status prior to the negotiation of the plea, he "never advised her, in any way," that her guilty plea would result in her deportation or exclusion from the United States. *Doc. 49*, Ex. 2. She alleges that she became aware of the potential immigration consequences for the first time during her plea colloquy, and failed to bring her concerns to the attention of the court because her counsel "whispered to me that I should not worry about that and that we will deal with that later. I trusted [him.]" *Id.* But for his faulty advice, she asserts that she would have refused to enter into the plea and would have proceeded to trial if a more favorable plea agreement

4

could not be negotiated. *Id.* Unsurprisingly, trial counsel's account of the events in question is somewhat different. He insists that he did, in fact, "at all times" advise her that she was subject to removal as a result of the criminal charges she faced. *Doc. 54,* Ex. 2. He further states that he advised her of the potential for her to be removed prior to her entry into the plea agreement. *Id.* If it were necessary to rely on counsel's affidavit, a hearing would be necessary to make credibility determinations. However, under this record, such is unnecessary as Defendant's contentions are subject to summary dismissal.

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74, (1977). The "truth and accuracy" of a defendant's statements during the plea hearing "should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir.1975) (per curiam).

Defendant's claim to have been unaware of the immigration consequences of a guilty plea is a "contention[] that in the face of the record [is] wholly incredible." First, during the plea hearing, Defendant was explicitly advised by the Court that "if you are not a citizen of the United States, pleading guilty to a felony will have immigration

consequences.  In fact, it would make it **virtually certain** that you would be deported if you plead guilty." *Doc. 58* at 4 (emphasis added).  At no point during the subsequent plea colloquy did Defendant ask about or object to this dire warning.  Defendant explains this inaction by claiming that her attorney whispered to her "that I should not worry about that and we will deal with it later." *Doc. 49*, Ex. 2.  Even assuming that such an ambiguous statement could dispel the Court's clear warning, her claim is refuted by the very next discussion of immigration consequences.

With Defendant standing right next to him, counsel, in summarizing the plea agreement stated, "And, your Honor, my client is a legal permanent resident so she faces immigration consequences as a result of this plea and she understands that, Judge." *Doc. 58* at 10.  Despite significant dialogue between the Court and Defendant about the contents of the plea subsequent to counsel's statement, Defendant raised no objection to his statement.

Next, the plea agreement itself makes clear the immigration consequences of a guilty plea.  Under a capitalized and underlined heading entitled "<u>IMMIGRATION REMOVAL AND OTHER IMMIGRATION CONSEQUENCES</u>," the agreement states as follows:

> Defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty.  **Indeed, because defendant is pleading guilty to a controlled substance offense, removal is presumptively mandatory.**

> Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's immigration status.  **Defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequences include defendant's automatic removal from the United States.**"

*Doc. 37* at 7 (emphasis added).

Defendant attempts to disavow this clear language by claiming that she had not read, let alone understood, the plea agreement.  This attempt fails because it directly contradicts Defendant's sworn responses to the Court's question about the plea agreement:

> THE COURT: Well, I understand you've reached a Plea Agreement with the Government. I think I have a copy of it right here, and it looks like on the last page, above your typed name, it looks like your signature. I'm going to show it to you. Did you sign this today?
> THE DEFENDANT: Yes.
> THE COURT: All right. And, before you signed it, did you read it from the beginning to the end?
> THE DEFENDANT: Yes.
> THE COURT: Did you have a chance to talk with your lawyer about this Plea Agreement before you signed it?
> THE DEFENDANT: Yes.
> THE COURT: As you stand there right now, are you comfortable that you understand each and every term of your Plea Agreement?
> THE DEFENDANT: Yes, sir.

*Doc. 58* at 8-9.  Defendant also seeks to avoid the implications of the plea agreement's clear language by pointing to the alleged whispered reassurance regarding deportation.  Again assuming that such an ambiguous statement could dispel the Court's clear

7

warning and the clear language of the written plea agreement, her claim that such a statement was made and that she relied upon it to in her decision to plead guilty is refuted by her final sworn statement before entering her plea:

> THE COURT: … Are there any -- is there anything else out there that you feel like somebody has promised to you to try to get you to plead guilty that's not written down in your Plea Agreement?
> THE DEFENDANT: No, sir.

*Doc. 58* at 15.

On every salient point, Defendant's self-serving affidavit, on which she exclusively relies, is nothing more than "a mere denial[] of that which she has previously admitted[, and] does not raise a substantial issue of fact . . . Although an allegation of fact must ordinarily be accepted as true, it is not required where . . . the allegation is contradicted by the files and records before the court." *Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970). Defendant's allegation that Mr. Ortiz somehow "misled" her into pleading guilty without her knowing of the immigration consequences attendant thereto is directly contradicted by the plea agreement and colloquy. Further, it is beyond dispute that, at her plea hearing and prior to entering a guilty plea, Defendant was advised of the consequences of pleading guilty, including removal from the United States. Therefore, Defendant has failed to show either that her attorney's performance was below an objective standard of reasonableness or that she was prejudiced by his supposed failures.

## IV.  CONCLUSION

Based on the record before the Court, I do not find extraordinary circumstances necessary to merit relief under a writ of error coram nobis and I recommend that the Court DENY Defendant's Motion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**